NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

VANESSA R., *Appellant,*

*v.*

DEPARTMENT OF CHILD SAFETY, M.S., R.R., *Appellees.*

No. 1 CA-JV 21-0014
FILED 6-29-2021

Appeal from the Superior Court in Maricopa County
No. JD36332
The Honorable Sam J. Myers, Judge

**AFFIRMED**

COUNSEL

David W. Bell Attorney at Law, Mesa
By David W. Bell
*Counsel for Appellant*

Arizona Attorney General's Office, Tucson
By Autumn Spritzer
*Counsel for Appellee*

**MEMORANDUM DECISION**

Presiding Judge David B. Gass delivered the decision of the Court, in which
Judge Michael J. Brown and Judge David D. Weinzweig joined.

**G A S S**, Judge:

¶1            Mother, Vanessa R., appeals the superior court's order terminating her parental rights to her two children. Because reasonable evidence supports the superior court's diligent-efforts finding, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

¶2            Mother is the biological parent of M.S., born in 2012, and R.R., born in 2016. Mother has a significant history of drug abuse, mental illness, and domestic violence. When the initial dependency proceedings began, she had been using methamphetamine intermittently for nineteen years and had been hospitalized over twenty times for mental-health issues. In August and September 2018, the Department of Child Safety (DCS) received several reports alleging mother was abusing drugs, harming herself because of her mental illness, and fighting with her boyfriend. When DCS investigated, mother confirmed the allegations. Accordingly, DCS took custody of the children and filed a dependency petition.

¶3            DCS referred mother for services, including substance-abuse testing and treatment, psychological and psychosexual evaluations, mental-health services, individual counseling with a domestic violence component, and a parent aide with visitation. Except for the parent-aide service, mother participated inconsistently and was closed out unsuccessfully from her services. Mother engaged in the parent-aide service and closed out successfully, but the parent aide recommended a second referral to address additional parenting goals.

¶4            Before DCS could refer mother for a second parent aide, five-year-old M.S. began exhibiting sexualized and self-harming behaviors which coincided with mother's visits. In April 2019, DCS moved to suspend visits between mother and M.S. The superior court granted the suspension, and ruled mother "must demonstrate some progress regarding mental health treatment and/or domestic violence counseling and/or substance abuse treatment before" it would review the suspension order. Mother continued to visit with R.R. through the parent aide.

¶5            In September 2019, mother completed a psychosexual evaluation with Dr. Alex Levitan. Because of mother's emotional state during the evaluation, Levitan could not draw any conclusions about whether she engaged in sexual behavior towards M.S. Levitan reported mother "was visibly distraught throughout the evaluation. It approached crisis. She was unable to answer questions. She had difficulty completing

tests. It seemed that she had significant difficulty regulating her emotions." He diagnosed mother with post-traumatic stress, depressive, and stimulant and alcohol-use disorders. Citing mother's "ongoing mental health concerns, maladaptive coping strategies, and history of domestic violence," Levitan gave a guarded prognosis about her ability to parent the children. He recommended mother engage in substance-abuse services, individual and domestic-violence counseling, and parenting services.

¶6            In December 2019, DCS moved to terminate mother's parental rights based on out-of-home placement for fifteen months. *See* A.R.S. § 8-533.B.8(c). The same month, DCS, mother, mother's therapist, and M.S.'s therapist discussed allowing mother to have indirect contact with M.S. in the hope in-person visits could resume gradually. They decided mother could write M.S. letters, and M.S.'s therapist would give her the letters. Mother wrote M.S. only one letter during the six months before the termination hearing. Additionally, mother remained in a violent relationship and eventually married her abuser.

¶7            The superior court held a four-day contested termination hearing between June and December 2020, after which it terminated mother's parental rights under the ground alleged. Mother timely appealed. This court has jurisdiction under article VI, section 9, of the Arizona Constitution, and A.R.S. § 8-235.A.

**ANALYSIS**

¶8            On appeal, mother challenges the superior court's finding DCS made diligent efforts to provide her with appropriate reunification services. She argues "DCS allowed [her] parent-aide services to lapse for an extended period" and "did not provide critical support and services which would allow [her] to have regular contact with [] M.S. and that would assist her in enhancing her parenting skills." She further says her "mental health challenges" were "exacerbated due to the stress caused by" not being able to continue her visits with M.S., and the stress "made it difficult for her to engage in the requested services." In suspending visitation, she argues, DCS "purposely failed to offer what seemed likely to benefit her most."

¶9            When seeking to terminate parental rights under the fifteen-month out-of-home placement ground, DCS must make "a diligent effort to provide appropriate reunification services." A.R.S. § 8-533.B.8. DCS must provide the parent "with the time and opportunity to participate in programs designed to help her become an effective parent." *Maricopa Cnty. Juv. Action No. JS-501904*, 180 Ariz. 348, 353 (App. 1994).

3

**¶10** DCS is not required to provide the parent unlimited time to "assume [her] responsibilities and take positive steps toward recovery." *See Maricopa Cnty. Juv. Action No. JS-501568*, 177 Ariz. 571, 577 (App. 1994). Likewise, DCS is not required to "provide every conceivable service" or to ensure the parent participates in the services offered. *Maricopa Cnty. Juv. Action No. JS-501904*, 180 Ariz. at 353. The superior court must examine the "totality of the circumstances of the dependency" in deciding whether DCS has made diligent reunification efforts. *See Donald W. v. Dep't of Child Safety*, 247 Ariz. 9, 26, ¶ 68 (App. 2019).

**¶11** Here, DCS arranged regular visits between mother and M.S. from September 2018 until April 2019. Because those visits were suspended, mother complains DCS did not diligently offer her reunification services. But the superior court halted the visits—not DCS. Mother does not challenge this ruling on appeal.

**¶12** Reasonable evidence in the record supports the suspension. Evidence offered at a hearing set on DCS's motion to suspend the visits showed six-year-old M.S. displayed sexualized behaviors in February 2019. She removed her pants and underwear and asked her foster brother to take pictures. When asked why she did so, M.S. replied, "[t]hat is what boys like." Later M.S. stated, "[m]other would want [the pictures], because I am only supposed to take those pictures for her." On occasions corresponding with visits, M.S. scratched her vaginal area until it bled. M.S.'s behaviors and disclosures led to a criminal investigation, and DCS's unit psychologist recommended suspending visits between mother and M.S. After the visits ceased, M.S.'s sexualized behaviors ceased, and she was able to stop taking her anxiety medication.

**¶13** Mother's argument does not acknowledge she rejected the superior court's offer to reinstate visits if she engaged in services. Though the superior court said it would consider reinstating the visits if mother could demonstrate "progress regarding mental health treatment and/or domestic violence counseling and/or substance abuse treatment," mother did not consistently engage in those services. Even after mental-health providers suggested mother write letters to M.S. through her therapist, mother wrote only one letter. Regardless of the suspension of her visits with M.S., mother overlooks how she created significant barriers to her reunification through her failure to engage consistently in the many other services DCS offered. By failing to engage in those services, mother passed up the opportunity to remedy the substance-abuse, mental-illness, and domestic-violence issues that caused her children's out-of-home placement. *See* A.R.S. § 8-533.B.8(c); *see also Mary Ellen C. v. Ariz. Dep't of Econ. Sec.*, 193

Ariz. 185, 192, ¶ 34 (App. 1999) (DCS need only "undertake measures" having "a reasonable prospect of success" towards reunification).

**¶14** Mother suggests the suspension of visits exacerbated her mental-health issues and made it more difficult for her to participate in services. But she points to no evidence in the record to support that proposition. Indeed, even before the superior court suspended visitation, mother's participation in substance-abuse and behavioral-health services was sporadic.

**¶15** Mother said she missed these services because of "the weather" and her depression, anxiety, and post-traumatic stress disorders—not because her visitation was suspended. The record also established mother's mental-health issues and abusive relationship with her husband, which continually destabilized her and impeded her progress, were the main impediments to mother's engagement.

**¶16** Reasonable evidence supports the superior court's finding DCS made diligent efforts to provide mother with appropriate reunification services, including visitation. *See* A.R.S. § 8-533.B.8; *Maricopa Cnty. Juv. Action No. JS-501904*, 180 Ariz. at 352–53 (finding the provision of "time and opportunity" to participate in remedial services to be sufficiently diligent).

## CONCLUSION

**¶17** We affirm the order terminating mother's parental rights to M.S. and R.R.

